**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TINA D.,[1]                                          Case No. 3:22-cv-152

        Plaintiff,                               Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.[2] As explained below, the Court will AFFIRM the ALJ's finding of non-disability, because it is supported by substantial evidence in the record as a whole.

**I.  Summary of Administrative Record**

On July 15, 2020, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning in August 2019[3] based upon diabetes, low vision, neuropathy, high blood pressure and cholesterol, multiple strokes and a heart attack. (Tr 275). After her claim was denied initially and upon

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.
[3]Plaintiff initially alleged a disability onset date of January 1, 2018, but orally amended that date at her evidentiary hearing before the ALJ.

reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On May 19, 2021, Plaintiff appeared telephonically with her attorney and gave testimony before ALJ Laura Chess; a vocational expert also testified. (Tr. 35-84).

Plaintiff was 47 years old on the alleged disability onset date, defined as a younger individual age 18-49, but had changed to the "closely approaching advanced age" category by the date of the ALJ's decision. (Tr. 27). She has at least a high school education. (*Id*.) She has past relevant work as a nurse aide, a stock clerk, a warehouse worker, and a forklift operator. (Tr. 25-26). She continued working until October 2020, but testified that she reduced her work hours beginning in May or June 2020. (Tr. 49-50).

On July 21, 2021, the ALJ issued an adverse written decision that concluded that Plaintiff is not disabled. (Tr. 15-28). The ALJ determined that Plaintiff has the following severe impairments: "diabetes mellitus with associated peripheral neuropathy; hypertension; dyslipidemia; right shoulder impingement, tear, and tendinosis; coronary artery disease with atrial fibrillation and status post stenting; status post cerebrovascular accident with sequela of mild chronic microvascular ischemic changes; bilateral conductive hearing loss; headache disorder; gastroesophageal reflux disease (GERD); and obesity." (Tr. 18). The ALJ considered an additional allegation of low vision, but declined to find low vision as a medically determinable impairment. (*Id*.) Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

2

The ALJ next determined that Plaintiff retained a Residual Functional Capacity ("RFC") that permits her to perform a range of light work, subject to the following additional limitations:

> No more than frequent stooping, overhead reaching, handling, fingering, and feeling with the bilateral upper extremities, or balancing, as defined by the Selected Characteristics of Occupations (S.C.O.). No more than occasional kneeling, crouching, crawling, exposure to vibration, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. The claimant cannot work in very loud environments, as defined by the S.C.O. No work at unprotected heights or in the vicinity of uncovered and/or unguarded moving machinery. No commercial driving.

(Tr. 20).

Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff could continue to perform two of her past relevant jobs as actually performed: stock clerk and warehouse worker. (Tr. 25). In the alternative, the ALJ determined that Plaintiff also could perform other jobs that exist in significant numbers in the national economy, including the representative positions of storage facility rental clerk, routing clerk, and injection-molding-machine tender. (Tr. 27). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 28). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred: (1) by failing to consider Plaintiff's alleged need to elevate her legs; (2) by improperly evaluating the opinion evidence; (3) by relying upon VE testimony that did not correspond with the RFC set forth in the ALJ's written opinion. The Court finds no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**[4]

---

[4]Throughout Plaintiff's memoranda, she appears to cite to the administrative transcript ("Tr."). However, none of the referenced citations correspond to the administrative transcript; instead, the pinpoint citations appear to be to "PageID" references. Defendant's memorandum also provides only PageID citations. The

Plaintiff argues that the ALJ erred by failing to accept her allegation that she needs to elevate her legs, by inadequately articulating her analysis of the medical opinion evidence, and by asking a hypothetical question of the vocational expert that differed from the RFC stated in the ALJ's written opinion.

### 1. Plaintiff's Alleged Need for Leg Elevation

Plaintiff's first claim is that the ALJ erred by failing to include a functional limitation requiring her to elevate her legs during the workday. In an opening statement at the evidentiary hearing, Plaintiff's counsel argued that his client should be found to be disabled in part because "she does experience some swelling in her feet" and "has been informed that she should elevate her extremities as well as wear compression stockings." (Tr. 43). After summarizing various other impairments, counsel reiterated at the end of his opening statement: "Ultimately, we feel she's [not] going to be able to keep and maintain employment due to the need to elevate her legs and then also just being off task and missing days of work." (Tr. 43-44). At the end of the hearing, counsel elicited testimony from the vocational expert that a need for leg elevation "to waist level or above on an occasional basis" would be work-preclusive.[5] (Tr. 81).

An opening statement is not evidence. The evidence to support Plaintiff's alleged need to elevate her legs consisted primarily of Plaintiff's subjective testimony. However, the ALJ discounted Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms" as "not entirely consistent with the medical evidence

---

parties' mutual failure to provide citations to the administrative transcript violates Local Rule 8.1(d), which explicitly requires parties in social security cases to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations."

[5]"Occasional" in social security parlance means that the activity occurs up to one third of the workday. *See generally* POMS DI 25001.001(A)(53).

and other evidence in the record." (Tr. 24). Plaintiff's first claim indirectly challenges that adverse credibility/consistency finding. In addition, Plaintiff argues that a functional limitation requiring "leg elevation" is supported by a clinical record from a treatment provider dated a year prior to Plaintiff's alleged onset of disability. The Court finds no error either in the ALJ's adverse credibility/consistency analysis, or in her failure to discuss the single treatment note on which Plaintiff now relies.

### a. The ALJ's Adverse Credibility/Consistency Analysis

An ALJ's assessment of subjective symptoms, including pain complaints, is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[6] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies between the record presented and Plaintiff's allegations.

At the hearing, Plaintiff testified that she can stand for only five to ten minutes at a time due to pain in her legs, with no mention of swelling. (Tr. 66). Counsel followed up by inquiring more specifically about swelling, stating (without citation) that "[s]ome of the records…talk about that you're having some swelling in your legs," and asking, "Is that true?" (Tr. 67). Plaintiff responded affirmatively, endorsing "swelling in my hands, feet,

---

[6] An ALJ's assessment of subjective symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent with</u> the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

7

legs, and arms." (*Id*.) She further testified that she elevates her legs "at least 15 minutes to 30 minutes two to three times a day" to alleviate swelling. (*Id*.) The ALJ's opinion accurately summarizes Plaintiff's subjectively reported symptoms, including her statement that "[s]he has swelling in all four extremities, and keeps her legs elevated for up to half an hour two or three times a day." (Tr. 23). However, the ALJ discounted many of Plaintiff's subjective complaints based upon numerous inconsistencies with the record. Plaintiff offers no "compelling reason" to reject that analysis, which the Court finds to be substantially supported.

As the ALJ noted, for example, Plaintiff claimed low vision but there was no evidence of that in the record. To the contrary, Plaintiff reported to her treatment providers that she did not have decreased or blurry vision or other vision changes on numerous occasions, and that her glasses fully correct any vision impairment. (Tr.18). Similarly, in contrast to her allegations of hearing loss, there were no recent hearing tests in the record. She was able to participate in the hearing without difficulty, with no noticeable deficits beyond a single request for her attorney to speak up. (Tr. 23-24).

The ALJ also discussed the statements that Plaintiff made in a function report completed on September 12, 2020. (Tr. 23). In that report, Plaintiff stated that she lives in a house with her boyfriend and his dad. She complained of general weakness and frequent dizziness that make it difficult to bend over, and of swelling in her "feet and hands." (Tr. 23, 286). She reported that pain and weakness keep her from many activities. (Tr. 290). She checked a box indicating that she uses crutches but they were

unprescribed.[7] (Tr. 292). Plaintiff reported that she feeds and waters her two cats. (Tr. 287). She stated she prepares very simple meals, and engages in "normal cleaning of the house" including daily dishes, laundry once or twice per week, and vacuuming once per week. (Tr. 288). Plaintiff also reported working 7 hour shifts three days per week and going outside a "few times a day." (Tr. 287, 289). On her days off work, she runs errands or attends doctor's appointments, as well as "lay[s] around." (Tr. 287). She also "usually" takes "a nap at some point." (Tr. 287).[8] She stated she shops for groceries and personal and household items once or twice per week, (Tr. 289), and watches movies every other day. (Tr. 290). She reported that she socializes in person, on the phone and by text, typically once a week. (*Id.*)

In addition to discussing some of the statements that appeared inconsistent with disability in Plaintiff's function report, the ALJ noted that Plaintiff continued to work until October 2020 "although with reduced hours for a number of months prior to her ceasing actual work activity." (Tr. 24). The ALJ reasoned that it was not clear that Plaintiff had reduced work hours based upon her symptoms, given testimony that she initially reduced work hours in May or June 2020 "due to filing her Title XVI application, along with work reductions due to the COVID-19 pandemic." (Tr. 25; *see also* Tr. 47, 49-50 (testimony that "they told me that I could only work so many hours" during "the beginning process" of her SSI application). While Plaintiff "also indicated that she had some physical limitations that prevented her from continuing to work full-time," the ALJ did not find that testimony to be consistent with the record. (*Id.*)

---

[7]Plaintiff did not testify to the use of crutches or any other assistive device at the hearing.
[8]Plaintiff endorsed a much greater need for naps at the hearing, testifying that she "naps multiple times a day for between half an hour and multiple hours due to fatigue." (Tr. 24).

In her reply memorandum, Plaintiff complains that the ALJ's subjective symptom analysis only minimally referenced her testimony regarding "leg elevation" and failed to articulate why the ALJ rejected that particular subjective complaint.[9] But there is no legal requirement for the ALJ to assess each and every subjectively reported complaint symptom by symptom, so long as the ALJ's analysis is substantially supported by the record as a whole. And the ALJ's overall analysis is well supported here.

### b. The August 2018 Treatment Note

In addition to her own testimony, (Tr. 67), Plaintiff argues that a single clinical record dated prior to Plaintiff's alleged onset of disability supports leg elevation. Specifically, Plaintiff presented to Certified Nurse Practitioner Myers on August 13, 2018 to "discuss *short term* disability" based upon a new complaint that her "feet and legs have been swelling and are ice cold." (Tr. 452). Plaintiff stated that she had experienced "intermittent swelling in lower extremities" "[*o]ver the last week.*" (Tr. 453 (emphasis added)). Notably, Ms. Myers found "no edema" during her objective physical examination. (Tr. 454). Nevertheless, based upon Plaintiff's subjective report of intermittent swelling of recent origin, Ms. Myers recommended the following treatment plan: "Recommend compression stockings daily. Exercise 30 minutes five days a week. Elevate extremities." (*Id*.) Plaintiff now argues that this one-time treatment recommendation is somehow equivalent to an opinion from a treating source that Plaintiff was functionally required to

---

[9]Even giving full credit to Plaintiff's testimony on leg elevation would not necessarily have altered the RFC as determined, since Plaintiff's alleged need to elevate her legs "15 to 30 minutes" twice per day arguably could have been accommodated before and after work, or during regular work breaks.

elevate her legs to waist level up to one third of the workday during the relevant disability period.[10] It is not.

First and foremost, the referenced treatment note - dated a full year prior to the alleged onset of disability - does not constitute a "medical opinion" about Plaintiff's functional abilities to perform work activities during the relevant disability period. Social Security regulations have long drawn a clear distinction between "medical opinions" and routine treatment notes. *See*, *e.g.*, 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). On March 27, 2017, the regulatory definition of a "medical opinion" was revised to conform with other regulatory changes. However, the essence of the definition as a statement about work-related functional limitations remains.[11] Thus, pursuant to 20 C.F.R. §404.1513(a)(2), a "medical opinion" is now defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" such as in "[y]our ability to perform physical demands of work activities…(including manipulative or postural functions…)."

_____

[10]Alternatively, Plaintiff suggests that the ALJ should have accepted the alleged "medical opinion" as supportive of an RFC limited to sedentary work. If limited to sedentary work, she arguably would have been entitled to a presumption of disability under Grid Rule 201.14 beginning in September 2020, after she reached the age of 50. For the reasons discussed *infra*, this alternative argument is unpersuasive.

[11]Plaintiff's citation to *Knapke v. Colvin*, Case No. 3:13-cv-399, 2015 WL 74960, at *8 (S.D. Ohio Jan. 6, 2015) is misplaced. That case considered whether a physician's statements, provided in a questionnaire completed at the request of the Social Security Administration satisfied an earlier definition of a "medical opinion."

Ms. Myers' August 2018 treatment note reflects nothing more than a recommended plan of treatment based upon Plaintiff's subjectively reported symptoms of "intermittent" leg swelling over the preceding week. Her objective exam found no swelling ("no edema").[12] The note contains no opinions whatsoever about Plaintiff's functional abilities to perform the physical demands of work in 2018, much less after the alleged onset of disability a year later in August 2019. Her recommendation does not suggest that Plaintiff is required to elevate her legs for any particular amount of time or at any particular height or frequency due to impairment, nor does she recommend leg elevation during the workday. Because the August 13, 2018 record is a routine treatment note that does not contain a medical opinion, the ALJ did not err by failing to discuss it. *See Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir.2007) (treatment note containing observations but no judgment about expected functioning did not qualify as "medical opinion" under the Social Security regulations); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) (portion of doctor's responses that did not address specific extent of limitations were outside the scope of a medical opinion); *Arnett v. Comm'r of Soc. Sec.*, 142 F.Supp.3d 586, 592 n. 5  (S.D. Ohio 2015) (holding that treatment notes were not a "medical opinion");  *Bulick v. Colvin*, Case No. No. 5:13 CV 1432,  2014 WL 2003049, at *1 (N.D. Ohio May 13, 2014) (same).

---

[12]Ms. Myers' reference to Plaintiff's report of swelling does not overcome the substantial evidence that supports the ALJ's adverse credibility/consistency analysis, nor does the inclusion of subjective symptoms transform the note into a medical opinion.  *See Francis v. Comm'r of SSA,*, 414 Fed. Appx. 802, 804, 2011 WL 915719, at *2 (6th Cir. 2011) (note that simply regurgitating of plaintiff's subjective statements was not medical opinion).

In her reply memorandum, Plaintiff offers an additional cursory argument regarding the August 2018 note.[13] She suggests that even if "the statements by Plaintiff's treatment provider [were] not opinions...the ALJ was nevertheless barred from ignoring them." (Doc. 16 at 2, PageID 1549). Notably, however, the cited record provides no objective support for Plaintiff's claim of limitation during the disability period. Apart from the questionable relevance based on its date, Ms. Myers objectively found "no edema" and based her vague treatment recommendations solely on Plaintiff's subjective report.

In any event, it is hornbook law that an ALJ is not required to discuss every medical record. Indeed, to do so would be an impossible task since most claimants have voluminous records.[14] *See Walker v. Sec'y of Health and Human Servs.,* 884 F.2d 241, 245 (6th Cir.1989) (Secretary need not address every piece of evidence in the record). In fact, an ALJ is not even required to discuss highly relevant treatment notes, so long as the record has been sufficiently considered as a whole. *See Boseley v. Comm'r of Soc. Sec.*, 397 Fed. Appx. 195, 1999 (6th Cir. 2010). On the record presented, there is virtually no evidence at all to support the extreme functional "leg elevation" limitation that Plaintiff now proposes. *See Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 162, 170 (6th Cir. 2016) ("the ALJ was not required to include a limitation for elevating legs in the RFC because, although there were some treatment records that mentioned leg elevation as a treatment for edema, no physician indicated that Sorrell's edema caused work-related

---

[13]Plaintiff does not cite to any other medical evidence of record either before or within the disability period that supports her testimony that she experiences swelling in her legs or that she is required to elevate them. Moreover, counsel did not specifically cite to the August 13, 2018 treatment note at the hearing or suggest to the ALJ that it contained any type of medical opinion.

[14]The case presented includes 1094 pages of medical records, including some duplicates, some records that significantly precede the alleged disability period, and others that appear unrelated to Plaintiff's allegedly disabling conditions. (*See generally*, Tr. 348-1442).

limitations, and no medical expert opined that Sorrell would need to elevate her feet to waist level during the workday or even every day"). In a similar case, this Court found no reversible error. *See Lewis v. Comm'r of Soc. Sec.*, Case No. 1:17-cv-538-MRB-SKB, 2018 WL 2473555, at *6 (S.D. Ohio June 4, 2018) (R&R adopted on Aug. 27, 2018) (affirming where ALJ made adverse credibility finding and did not include limitation to elevate legs, holding that it was not error for ALJ to fail to discuss single ER record in which a physician advised leg elevation to reduce swelling).

## 2. The ALJ's Evaluation of Agency Medical Opinion Evidence

Plaintiff's second assignment of error urges reversal based upon error in the evaluation of the actual "medical opinions" in the record. Both opinions were generated by agency reviewing physicians, Dr. Mikalov and Dr. Torello, who considered Plaintiff's records on initial review and on reconsideration. The ALJ analyzed the opinions as follows:

> I am partially persuaded by the opinions of Abraham Mikalov, M.D., and Lynne Torello, M.D., given on behalf of the Division of Disability Determination at the initial and reconsideration levels, respectively (Exhibits 3A, 4A, 7A, 8A). Both reviewing physicians opined that the claimant is capable of exertion consistent with light-level work, subject to a number of postural, climbing, and hazard exposure limitations. I find these recommendations consistent with the medical record, and have included them in the residual functional capacity as noted above. Both Dr. Mikalov and Dr. Torello further opined that the claimant is limited in [her] ability to reach, but only overhead and with [her] right arm, and with no manipulative limitations. Considering the evidence received through the hearing level, including the claimant's subjective complaints of pain and limitation, I have imposed similar levels of limitation on reaching overhead with both arms, as well as limited her to no more than frequent handling, fingering, and feeling as a result of her neuropathic symptoms. Finally, in deference to the claimant's conductive hearing loss, I have limited the environmental noise level she can be exposed to.

(Tr. 25).

The Court finds the above analysis to adequately state why the ALJ found the opinions to be only "partially" persuasive.  Plaintiff does not identify any limitations that were included by the agency physicians that the ALJ declined to adopt. Rather, Plaintiff urges this Court to reverse and remand for additional discussion of supportability and consistency factors, maintaining that the ALJ's analysis reflects insufficient articulation of those two critical factors.

The Court declines to reverse on this slim read. The ALJ's more detailed discussion of the medical record and of the nonmedical record, including Plaintiff's daily activities, strongly supports her relatively brief discussion of the supportability and consistency factors. In addition, the ALJ found the two opinions to be only "partially" persuasive, explaining why she added several limitations beyond those endorsed by the agency physicians. *See McQuillen v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-6006, 2021 WL 6133277 at *7 (S.D. Ohio Dec. 29, 2021) (holding that any possible error was harmless where ALJ adopted more restrictive limitations than agency physicians on whose opinions he relied), adopted at 2022 WL 867270 (S.D. Ohio Mar. 23, 2022). Unsurprisingly, Plaintiff does not complain about the ALJ's adoption of additional limitations. But she also fails to identify any limitation that the ALJ should have found (other than the leg elevation issue) and therefore wholly fails to explain how she suffered any prejudice. Even if this Court were to accept Plaintiff's argument that the ALJ could have improved upon her articulation of the consistency and supportability factors, the Court will not remand for harmless error.

### 3.  The ALJ's Reliance on VE Testimony

Plaintiff's third claim asserts error in the ALJ's reliance on the vocational expert's testimony based upon a discrepancy between the hypothetical posed to the VE as recorded in the hearing transcript and the RFC as determined by the ALJ in her written opinion. The hypothetical is stated in the hearing transcript as follows:

> I would like you to consider that this individual could lift and/or carry 20 pounds occasionally and ten pounds frequently. This individual could stand/or walk a total of six hours and sit for a total of six hours in an eight-hour workday with normal breaks. This individual could never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs. This individual could frequently balance, as that term is denied by the <u>Selected Characteristics of Occupation</u>. This individual could frequently stoop but only occasionally kneel, crouch, and crawl. There could be frequent reaching overhead with both upper extremities. There could be frequent handling and fingering with both upper extremities. There could be frequent feeling with both upper extremities. So, again, frequent handling, fingering, and feeling, and that would be with both upper extremities. There could be only occasional exposure to vibration. This individual is unable to work in very loud environments, as that term is defined by the <u>Selected Characteristics of Occupations</u>, so very quiet, quiet, moderate, and loud would be permitted, but very loud environments would be excluded. *There'd be work at unprotected heights [sic] or in the vicinity of uncovered and guarded moving machinery and no commercial driving.* ....

(Tr. 74-75) (emphasis added). The ALJ's written RFC finding is substantively identical except that she identifies the limitation in the last sentence as "**no work** at unprotected heights or in the vicinity of uncovered and guarded machinery…" (Tr. 20 (emphasis added)).  Based upon that discrepancy, Plaintiff urges remand.

In response, Defendant argues that the hearing transcript reflects nothing more than a transcription error which does not require reversal. The Court agrees. The purpose of a hypothetical question posed by an ALJ to a vocational expert is to spell out RFC limitations. Common sense and experience both teach that hypothetical questions do not, as a rule, spell out functional abilities in which a claimant has <u>no</u> limitation. In fact, in this

Court's extensive experience reviewing social security transcripts for more than a decade, the undersigned has never seen a hypothetical limit a claimant to work that - if the instant transcript is read literally – ostensibly would *mandate* "work at unprotected heights or in the vicinity of uncovered and guarded moving machinery." In short, the only reasonable contextual interpretation is that the ALJ intended (consistent with her written opinion) that there would be "[**no**] work at unprotected heights or in the vicinity of uncovered and guarded moving machinery…." The Court's conclusion that the discrepancy results from a transcription error also is consistent with the inclusion of such restrictions that Plaintiff can "never climb ladders, ropes, or scaffolding," can only "occasionally climb ramps and stairs" and can only "frequently" balance with multiple "occasional" postural restrictions. And the presumed transcription error is consistent with latter part of the same sentence that Plaintiff can perform "no commercial driving." (Tr. 75).

Obvious transcription errors do not provide a basis for remand. "[J]ust as there can be no such thing as an error-free, perfect trial, there can be no such thing as an error-free, perfect administrative decision, especially in an agency called upon to adjudicate a nearly inconceivable number of claims every year." *Wood v. Comm'r of Soc. Sec*., Case No. 2:18-cv-1098 , 2019 WL 3543087, at *6 (S.D. Ohio, 2019) (cleaned up). The Sixth Circuit has held that "[n]othing in the statute requires the District Court to ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding." *Calkins v. Secretary of HHS*, 793 F.2d 1290 (Table), 1986 WL 17083, at *2 (6th Cir. 1986). Courts therefore consistently decline to remand based upon clear typographical errors. *Accord, Fenstermaker v. Comm'r of Soc. Sec. Admin*., Case No. 1:17-cv-01272, 2018 WL 2709849, at *18 (N.D. Ohio, May 21, 2018) (finding no basis for reversal where

17

hearing transcript stated hypothetical as allowing for "a full range of exposure to hazards, including the use of moving machinery and unprotected heights" but the written RFC prohibited all exposure to those hazards because in context, the hearing transcript reflected error); *see also Wilson v. Comm'r of Soc. Sec*., Case No. 5:17–cv–00814, 2018 WL 1605164, at *17 (N.D. Ohio April 3, 2018) (reference to "civil" rather than "simple" tasks in hearing transcript likely a transcription error that did not support remand, but alternatively finding remand for purpose of clarification would be futile based upon the jobs to which the VE testified); *Shearman v. Comm'r of Soc. Sec.,* No. 1:12-CV-760, 2014 WL 1217966, at *1 (S.D. Ohio Mar. 24, 2014) (harmless error in typographical inconsistency between written and oral RFC); *Deaton v. Astrue,* 1:10-cv-461-SAS, 2011 WL 4064028 * 5 (S.D. Ohio Sept.13, 2011) (discrepancy reflected harmless error); *Quaite v. Barnhart*, 312 F.Supp.2d 1195, 1199-1200 (E.D. Mo. 2004) (typographical or clerical error in written decision did not support reversal).

In the alternative, the Court finds the referenced error to have been harmless on the record presented because: (1) vocational expert testimony is permitted but not required at Step 4 to determine whether a claimant can return to her prior relevant work; and (2) Plaintiff failed to show that she could not perform the demands of her prior positions as stock clerk and warehouse worker as she actually performed those positions. When the ALJ asked Plaintiff to describe her duties while working in her multiple positions as a stock clerk and warehouse worker, she described several (including Meijer's, Lowes, Payless Shoe Store, and Kuehne+Nagel) that she actually performed at the light exertional level. (Tr. 72-73). Plaintiff, who has the burden of proving disability at Step 4, did not testify that she performed <u>any</u> of those positions while working at unprotected

18

heights or in the vicinity of uncovered and guarded moving machinery. The ALJ clearly determined that Plaintiff could return to her prior work in her written opinion. No VE testimony was required to support that determination based upon the record presented.[15] *Accord Moots v. Comm'r of Soc. Sec. Admin*., 2012 WL 567653, at *6 (N.D. Ohio 2012) (finding discrepancy harmless based on same reasons, and noting that plaintiff had not shown how her impairments under the ALJ's more restrictive written RFC prevented her return to her position as a greeter).

Additionally, the ALJ solicited VE testimony at Step 5 of the sequential analysis to support her finding that Plaintiff could perform several alternative jobs.  Although the ALJ's written opinion ostensibly varied from the hypothetical in stating that Plaintiff was limited to *no* work at unprotected heights or in the vicinity of uncovered and guarded moving machinery, two of the representative jobs to which the VE testified and that the ALJ found do not appear to require working with those environmental hazards. *See e.g*., DOT § 222.687-022, Routing Clerk, 1991 WL 672133, DOT § 295.367-026 Storage Facility Rental Clerk, 1991 WL 672594.  The referenced two jobs total 167,800 jobs in the national economy, which is easily a "significant number" under controlling case law. *See Taskila v. Comm'r of Soc. Sec*., 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs to be significant).

The DOT representative jobs are considered categorical jobs. In her reply memorandum, Plaintiff argues that some jobs within those categories *could* theoretically

---

[15] While VE testimony is not required, the VE's testimony here still provides some support for the written decision given that Plaintiff did not testify that any of her prior positions required work at unprotected heights or with moving machinery, insofar as the VE testified that Plaintiff could perform all of her prior stock clerk and warehouse positions at Meijer's, at Kuehne-Nagel, at Lowe's and at Payless as actually performed. (Tr. 75-76).

allow work at unprotected heights or with moving machinery.[16] But Plaintiff's argument is unpersuasive. Both of the DOT positions clearly describe under duties: "Moving Mech. Parts: *Not Present - Activity or condition does not exist*," and "High Exposed Places: *Not Present - Activity or condition does not exist*." *See* DOT descriptions for Routing Clerk and Storage Facility Rental Clerk, *supra,* (emphasis added). In addition, the DOT description for each position states that climbing and balancing are "not present." *Id. See also generally, Fenstermaker*, 2018 WL 2709849 at *18 ("[R]emanding this matter for the purpose of clarifying that the first VE hypothetical included a limitation of no exposure to hazards, including use of moving machinery and unprotected heights, would be futile"); *Farrell v. Comm'r of Soc. Sec.*, Case No. 1:14-cv-1232, 2016 WL 316724, * 7 (W.D. Mich. Jan 27, 2016) (finding ALJ's failure to include certain postural limitations that were part of the RFC into the hypothetical to the VE amounted to harmless error because the jobs identified by the VE did not require the postural abilities that the ALJ found the claimant was limited in doing).

### III.  Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[16]For example, the broad categorical job of "routing clerk" is generally described as clerical in nature but states that it "[m]ay" include that of a conveyor belt package sorter in the retail trade, or a mail sorter in the railroad transportation industry. *See* DOT § 222.687-022, 1991 WL 672133. In addition, because the DOT description for Storage Facility Rental Clerk alludes to the use of security cameras (and loading "film" into such cameras), Plaintiff speculates that, depending on the placement of such cameras, the work may involve "unprotected heights."